Judgment rendered January 15, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,117-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CASSIE MAE ROGERS                    Plaintiff-Appellee

versus

CITY OF BOSSIER CITY                 Defendant-Appellee

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 173,849

Honorable Allen Parker Self, Jr., Judge

* * * * *

| | |
|---|---|
| KOLB LAW FIRM, LLC<br>By: Andrew C. Kolb | Counsel for Defendants-Appellants, David Montgomery, Don "Bubba" Williams, Jeffrey "Jeff" Darby, Jeff Free, and Vince Maggio |
| HARPER LAW FIRM, APLC<br>By: Jerald R. Harper<br>Anne E. Wilkes | Counsel for Defendants-Appellees, City of Bossier City, Chris Smith, and Brian Hammons |

LAW OFFICE YVES M. VERRET, III      Counsel for Intervenor-
By: Yves M. Verret, III            Appellee, Edward
                                     Charles Jacobs

DANNIE P. GARRETT, III        Counsel for Plaintiff-
                                     Appellee, Cassie Mae
                                     Rogers

\* \* \* \* \*

Before STEPHENS, HUNTER, and ELLENDER, JJ.

**HUNTER, J.**

Defendants, five members of the City Council for the City of Bossier City, appeal the issuance of a writ of mandamus ordering the Bossier City Council to call an election on a proposition to amend the City Charter. For the following reasons, we affirm.

## FACTS

On July 8, 2024, Stephanie B. Agee, the Registrar of Voters for Bossier Parish ("the Registrar"), was presented with a "Petition for a Special Election for Term Limits for Bossier City Council and Bossier City Mayor." The petition requested an election on a proposition to amend the Bossier City Charter to provide for term limits for the City's Mayor and members of the City Council, and it was signed by a number of registered voters residing in the City of Bossier City ("the City").[1] The proposition also called for the matter to be placed on the ballot for the November 5, 2024 election.

According to the Bossier City Charter, the petition was required to be signed "by electors equal in number to thirty-three percent of the votes cast for all candidates for Mayor at the last preceding contested general election." A total of 3,582 names were submitted with the petition for verification, and based on the number of votes cast in the last preceding Mayoral election, the petition required at least 2,715 verifiable signatures. Ultimately, the Registrar accepted and certified 2,982 of the signatures submitted. Thus, the petition met the requirements provided by the Bossier City Charter for the calling of an election.

---

[1] The proposed amendments called for a maximum of three terms for the offices of Mayor and councilmembers, with all terms served prior to January 1, 2024, to be counted in determining whether an officer had reached the maximum number of terms.

On July 24, 2024, a petition proposing an election to amend the City Charter was delivered to the City. At a meeting held on August 13, 2024, the City Attorney advised councilmembers the petition was in the proper form and contained the requisite number of signatures required by the City Charter. Nevertheless, the Bossier City Council ("the City Council") rejected a resolution calling an election.[2]

On August 16, 2024, Cassie Mae Rogers, a registered voter in Bossier Parish and one of the signatories on the petition proposing the amendment, filed a "Petition for Writ of Mandamus." Plaintiff requested a writ of mandamus be issued ordering the City Council to call an election to present to the voters a proposition to amend the City Charter relative to term limits for the Mayor and members of the City Council. More specifically, plaintiff prayed:

> Petitioner prays that an Alternative Writ of Mandamus issue, ordering the City of Bossier City to act on or before August 27, 2024[3] to call an election to be held on December 7, 2024 for submission of the amendments to the City Charter proposed through the Petition certified by the Registrar of Voters and delivered to the City on July 26, 2024, and to take all such ministerial actions required to facilitate the calling and conduct of that election, or to appear and show cause why it should not be ordered to do so.

Subsequently, plaintiff amended the petition to add as defendants the members of the City Council, David Montgomery, Chris Smith, Brian Hammons, Jeffrey "Jeff" Darby, Don "Bubba" Williams, Jeff Free, and Vince Maggio.

_____

[2] Two City Councilmembers voted to call the special election; however, the remaining five Councilmembers, who are the appellants, opposed it.

[3] On August 27, 2024, the City Council held another meeting and again rejected the request for a resolution to call an election.

2

Williams, Darby, Free, Maggio, and Montgomery ("defendants"), filed an answer, a dilatory exception of prematurity, a peremptory exception of no cause of action, and affirmative defenses.[4] Defendants argued the petition was premature because a City Council meeting was scheduled for September 10, 2024, and the matter could be addressed at that time. They also argued plaintiff's petition failed to state a valid cause of action because the proposed amendment to the Charter was invalid on its face, as the proposed date for the election was incorrect and the amendment, if passed, would shorten the terms of the current councilmembers.

The City, through its Mayor in his executive and administrative capacity, filed an answer and a memorandum in support of plaintiff's petition in opposition to defendants' filing. More specifically, the City supported the issuance of a writ of mandamus and opposed the City Council's refusal to call an election as mandated by the City Charter. The City described the defendants' actions as "self-interested" and argued the defendants' claim that the amendment will shorten the current City Councilmembers' terms is "false and unsupportable," and even if accurate, would not serve as a basis for refusing to comply with the City Charter.

A hearing was conducted on September 6, 2024, during which the Registrar testified her office reviewed the petition of electors. She identified a copy of the proposed amendments which had been submitted to her office for verification of voters' signatures, and she testified the propositions were signed by the requisite number of voters in Bossier City and in accordance

---

[4] The two remaining Councilmembers, Hammons and Smith, filed a separate answer to the amended petition.

3

with the City Charter. The Registrar further stated she retained a copy of the submitted proposals and returned the originals to the person who submitted them. The Registrar unequivocally testified the number of signatures required were "accepted and certified" by her office.[5]

On September 9, 2024, the district court issued an "Opinion/Order" granting mandamus relief and ordering the "City of Bossier City and the City Council of the City of Bossier City to perform its nondiscretionary/mandatory duty of calling an election to submit to the voters the proposed propositions which would serve to amend the City Charter as proposed in this petition." The district court also ordered the "defendants to take all such ministerial actions required to facilitate the calling and conducting of the required election."[6]

Defendants appeal.

## DISCUSSION

Defendants contend the district court erred in issuing the writ of mandamus and ordering the City Council to call an election. Defendants argue as follows: (1) plaintiff failed to submit the actual petition of electors into evidence during the rule to show cause; (2) plaintiff failed to prove the petition of electors containing the proposed ordinance was actually submitted to the City Council as required by the City Charter; (3) the City Council has the discretion to "decline to send an invalid ordinance to election"; (4) the "erroneous date" of the election invalidated the proposed

---

[5] The actual petition of electors with the signatures was not presented during the Registrar's testimony to be authenticated in open court, and it was not submitted into evidence.

[6] The district court did not specify when the matter should be placed on a ballot.

4

ordinance; (5) the proposed charter amendments contained in the proposed ordinance violated La. R.S. 33:3395.6; and (6) the trial court erred in finding evidence regarding voter turnout for November versus December elections in Presidential years is irrelevant.

A writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. La C.C.P. art. 3862. A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law. La. C.C.P. art. 3863. A ministerial duty is a duty in which no element of discretion is left to the public officer. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law. *Hoag v. State*, 04-0857 (La. 12/1/04), 889 So. 2d 1019.

Mandamus is an extraordinary remedy to be applied where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. *Hoag v. State*, *supra*. A trial court's findings of fact in a mandamus proceeding are subject to a manifest error standard of review. *Cooley v. Williams*, 22-0564 (La. App. 4 Cir. 1/30/23), 358 So. 3d 127, *writ denied*, 23-00289 (La. 4/25/23), 359 So. 3d 978. However, where statutory interpretation is at issue in mandamus proceedings, appellate courts apply a *de novo* standard of review. *Town of Sterlington v. Greater Ouachita Water Co.*, 52,482 (La. App. 2 Cir. 4/10/19), 268 So. 3d 1257, *writ denied*, 19-00913 (La. 9/24/19), 279 So. 3d 386, and *writ denied*, 19-00717 (La. 9/24/19), 279 So. 3d 931.

A home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose. La. Const. art. VI, § 5(C). Further, La. R.S. 33:1395.4 provides:

> A. The method and frequency of amending the charter may be provided in said charter and the charter may provide a procedure by which the local governing authority or resident of the municipality or parish may propose changes in the charter. Notwithstanding the provisions of R.S. 33:1395(A), in addition, any parish or municipality may amend an existing home rule charter either by amendments proposed by the charter commission or by amendments proposed by the governing body.

> B. The proposed changes in the charter shall be approved by a majority of the electors of the municipalities or parish as provided by Article VI, Section 5 of the Louisiana Constitution of 1974.

Home Rule Charter provisions are interpreted according to rules of statutory interpretation. *Council of City of New Orleans v. Donation*, 23-01106 (La. 3/22/24), 382 So. 3d 27; *Montgomery v. St. Tammany Parish Gov't, by and through St. Tammany Parish Council*, 17-1811 (La. 6/27/18), 319 So. 3d 209. Rules of statutory interpretation require a court to give words "their generally prevailing meaning," and, when such meanings render a law "clear and unambiguous," "the law should be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. arts. 9, 11.

In the instant case, Chapter 21 of the Bossier City Charter sets forth the requirements for amendments to the Charter. Pursuant to Section 21.01(b), amendments to the City Charter may be proposed "by petition of

6

electors of the City as outlined in Section 5.01, signed, examined, amended and certified."[7]  Section 21.04 provides:

> ***[I]f any amendment is proposed by petition of electors, the City Council shall submit the same to the electors of the City at a special election*** to be called no less than ninety (90) nor more than one hundred twenty (120) days after the receipt of the registrar's certificate of sufficiency, if authorized by state law, or if not on the next date so authorized. Any number of proposed amendments to this Charter may be submitted at any such general municipal election.

The starting point for the interpretation of any statute is the language of the statute itself. *Auricchio v. Harriston*, 20-01167 (La. 10/10/21), 332 So. 3d 660; *Dejoie v. Medley*, 08-2223 (La. 5/5/09), 9 So. 3d 826. When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision must be applied as written, with no further interpretation made in search of the legislature's intent. *Id.*; La. Civ. Code art. 9; La. R.S. 1:4.

The clear and unambiguous language of Section 21.04 of the Bossier City Charter states when an amendment is proposed by petition of electors,

---

[7] Section 5.01 is entitled "Initiating ordinance: Referendum for amendment or repeal.  It provides as follows:

> Any proposed ordinance may be submitted to the City Council by petition signed by electors equal in number to thirty-three (33) percent of the votes cast for all candidates for Mayor at the last preceding contested general election. Where the petition contains a request that the ordinance be submitted to a vote of the people, if not passed without veto by the City Council, the City Council shall either pass without veto the ordinance without alteration within thirty (30) days after attachment of the certificate of the registrar of voters to the petition; or forthwith after the registrar of voters has attached his/her certificate to the petition, the City Council shall call an election to be held within ninety (90) days thereafter. At the special or general City election, the ordinance shall be submitted without alteration to the vote of the electors of the City. When voting upon the ordinance, the ballots used shall contain these words: "For the ordinance" (stating the nature of the proposed ordinance); "Against the ordinance" (stating the nature of the proposed ordinance). The ordinance shall become operative if a majority of the votes are in favor of it. The Mayor shall have no power to veto an ordinance so passed.

the City Council *shall* submit the same to the electors of the City at a special election.   In *Auricchio*, *supra*, the Louisiana Supreme Court stated:

> The word 'shall' is mandatory. La. R.S. 1:3. Under well-established rules of interpretation, the word "shall" excludes the possibility of being "optional" or even subject to "discretion," but instead means "imperative, of similar effect and import with the word 'must.' " *Louisiana Fed'n of Tchrs. v. State*, 2013-0120 (La. 5/7/13), 118 So. 3d 1033, 1051.

*Id*., at 663.

In the instant case, in issuing the writ of mandamus, the trial court stated:

> [W]hen a duly certified proposition is proposed by the electors which is not invalid the wording of the Charter itself seems to impose a mandatory duty on the Council by utilizing the word "shall."

We agree.  Notwithstanding the Charter's mandate to call an election "if any amendment is proposed by petition of electors" the City Council twice refused present the proposal to the voters.[8]

Defendants rely on the ruling in *Goudeau v. Avoyelles Parish Police Jury*, 23-398 (La. App. 3 Cir. 7/7/23), 368 So. 3d 767, to support their claim that plaintiff was required to introduce the electors' petition into evidence at

---

[8] Defendants' refusal to call an election may be construed as malfeasance in office.  La. R.S. 14:134 provides:

> Malfeasance in office is committed when any public officer or public employee shall:
>
> (1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
>
>                \*\*\*
>
> (3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.

the hearing.  In *Goudeau*, the plaintiff filed a petition for a writ of mandamus, alleging the police jury failed to call an election after a petition to elect a home rule charter commission was presented.  The Registrar of Voters verified that the petition submitted contained the requisite number of signatures.  The police jury challenged the validity of the signatures collected and filed a third-party demand against the Registrar of Voters.  The court of appeal concluded the plaintiff's failure to introduce the petitions into the record was fatal to his petition for a writ of mandamus.  The court stated:

> [La. R.S. 33:1395] requires that the governing authority must be presented with a petition for the election of a home rule charter commission . . . signed by not less than ten percent of the electors within the boundaries of the affected municipality or parish as certified by the registrar of voters. The letter of certification of the Registrar of Voters is insufficient to meet this burden of proof – the petitions themselves are a necessary element of proof for [the plaintiff] to show that he is entitled to the relief he seeks. We find, therefore, that the trial court legally erred when it made the Writ of Mandamus peremptory.

We find *Goudeau* is distinguishable from the instant case.  Unlike the defendant in *Goudeau*, defendants herein have not challenged the validity of the electors' signatures or the Registrar of Voters' certification.  Additionally, during her testimony, the Registrar of Voters identified a copy of the proposals which were submitted to her office for verification.  She also explained the process her office utilized for verifying and certifying the voters' names and qualifications, and she testified the signatures submitted to her for verification had been certified by her office.  The Registrar's testimony was uncontroverted.

Further, notwithstanding defendants' argument that plaintiff failed to prove the electors' petition containing the proposed ordinance to the City

9

Council, it was undisputed in the lower court that the propositions were submitted to the City Council on two separate occasions. Both times, the propositions were considered and rejected. Had the petition not been presented, it is unlikely this matter would be before this Court. In well-reasoned opinion below, the trial court stated:

> [T]here exists no dispute that the petitions had been duly certified, and no issue was raised via answer or by affirmative defense regarding the validity of any of those signatures so certified by the Registrar of Voters that would call into question the petition's existence, sufficiency or certification. A copy of the petition which the registrar was requested to certify is maintained in her office as a public record.

This argument lacks merit.

We decline to address defendants' remaining arguments. Defendants' alleged concerns regarding an "erroneous date," voter turnout numbers, and disruption of current terms are not valid reasons for the City Council to refuse to place before the electorate proposed amendments to the City Charter which have been properly submitted by petition. Pursuant to the clear language of the City Charter, the propositions must be placed before voters in an election, and we decline to interfere in the legislative process by deciding, before adoption, that these proposed amendments would be invalid if adopted. [9]

We find the trial court did not err in granting the writ of mandamus and ordering the Bossier City Council to call an election as mandated by its Charter. Accordingly, we affirm the judgment of the trial court.

---

[9] Should voters decide to reject the amendments, then the questions regarding their validity would be moot. Conversely, should the electorate adopt the amendments, the opponents will have ample opportunity to challenge their validity in the courts before the amendments become effect.

**CONCLUSION**

For the foregoing reasons, the trial court's judgment is affirmed. Costs of the appeal, in the amount of $331.00, are assessed to defendants, Don "Bubba" Williams, Jeffrey "Jeff" Darby, Jeff Free, Vince Maggio, and David Montgomery.

**AFFIRMED.**